1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                               **DISTRICT OF NEVADA**

8

9    JUAN X. HIGH,                        )
                                          )
10                  Plaintiff,            )           03-05-CV-00241-LRH(RAM)
                                          )
11   vs.                                  )
                                          )           **ORDER**
12   JAMES BACA, *et al.*,                )
                                          )
13                  Defendants.           )
     ─────────────────────────────────── /

14

15          This is a civil rights action brought *pro se* by Juan X. High, a prisoner at the Ely State Prison

16   in Ely, Nevada.  Before the Court is plaintiff's Second Amended Complaint (docket #32) for

17   screening pursuant to 28 U.S.C. § 1915A.  The Court had previously reviewed plaintiff's amended

18   complaint, finding that was sufficient to proceed as to various claims and defendants, but was

19   deficient in some respects and did not state claims against other defendants.  The Second Amended

20   Complaint, filed October 20, 2005, raises the same original seven claims and adds three additional

21   claims.  The Court's review and conclusions as to this Second Amended Complaint are set forth

22   below.

23          Pursuant to the Prisoner Litigation Reform Act (PLRA), federal courts must dismiss a

24   prisoner's claims, "if the allegation of poverty is untrue," or if the action "is frivolous or malicious,"

25   "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant

26   who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to

1  state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure

2  12(b)(6), and the Court applies the same standard under Section 1915(e)(2) when reviewing the

3  adequacy of a complaint or amended complaint.

4  Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v.*

5  *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a

6  claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim

7  that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In

8  making this determination, the Court takes as true all allegations of material fact stated in the

9  complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v.*

10  *Xoma Corp.*, 74 F.3d 955, 957 (9th Cir.1 996). Allegations in a *pro se* complaint are held to less

11  stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9

12  (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Balistreri v. Pacifica*

13  *Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

14  All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the

15  prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal

16  conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims of

17  infringement of a legal interest which clearly does not exist), as well as claims based on fanciful

18  factual allegations (*e.g.* fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319,

19  327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

20  Plaintiff's Second Amended Complaint asserts claims, pursuant to 42 U.S.C. § 1983, for

21  violation of his constitutional rights under the First Amendment and Eighth Amendment to the

22  United States Constitution. The primary issue is his claim that he has been denied the opportunity to

23  practice his religion without interference and that he has been retaliated against for filing grievances

24  related to his religious practice and other conditions of his confinement. He also claims that the

25  retaliation has exposed him to future harm from other inmates who have heard him referred to as a

26  snitch. Finally, the three new claims raised include a claim of denied medical care and another claim

1  of interference with religious exercise, and finally a general claim of conspiracy.

2      To state a claim under 42 U.S.C. §1983, a plaintiff must allege two elements: (1) that a right

3  secured by the Constitution or laws of the United States was violated, and (2) that the violation was

4  committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

5  (1988); *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

6      Count I

7      Count I of the complaint alleges that plaintiff has been subjected to retaliatory transfers for

8  filing grievances, violating his rights under the First and Fourteenth Amendments.  Plaintiff has

9  stated a claim for relief in Count I.  Defendants Hildreth, Hooper, Herndon, Hill-Baca, Foster, and

10 Tessier shall be required to answer on this count.  Defendants Reed and Donat still have not been

11 sufficiently tied to the alleged retaliation.  Allegations that they did not require the other defendants

12 to follow Administrative Regulation 552.02 in effecting the transfer are insufficient.  AR 552.02

13 advises that a 48-hour notice "should" be given before an involuntary transfer.  It does not, however,

14 mandate such notice.

15      Count II

16      In Count II, High complains that his religious experiences have been "qualitatively"

17 diminished because he has been denied the proper diet and special meal timing required by his

18 Muslim faith during the December Ramadan fast.

19      The right to free exercise of religion is one of our most preciously guarded rights.  *Ward v.*

20 *Walsh*, 1 F.3d 873 (9th Cir.1993), *cert*. denied, 510 U.S. 1192 (1994).  However, "it is necessarily

21 limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional

22 goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  *Turner v.*

23 *Safley*, 482 U.S. 78, 89 (1987),  provides the test for balancing those interests: "When a prison

24 regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related

25 to legitimate penological interests."  *Turner* requires balancing the following four factors in

26 determining whether the facts alleged by High rise to a First Amendment violation: first, whether the

3

1    regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective;

2    second, whether prisoners have alternative ways of exercising the circumscribed right; third, whether

3    accommodating the right would have a deleterious impact on other inmates, guards, and the

4    allocation of prison resources generally; and fourth, whether alternatives exist that "fully

5    accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." *Id.*

6       The analysis provided in the Magistrate Judge's previous order is applicable here. High has

7    stated a claim against defendants McBurney, Schomig and Sims on this claim and it may proceed.

8       <u>Count III</u>

9       In Count III, High claims his civil rights have been violated in that prison officials have

10    retaliated against him on account of his mode of religious expression or because he has exercised his

11    First Amendment right to file grievances based on religious rights.

12       The basis of this claim has not been significantly altered. Neither has High stated facts

13    sufficient to hold many of the named defendants to answer on this claim. His bald assertion that

14    "Defendants Baca, Budge, Coleman, Hooper, Hildreth, Foster, Schomig, McBurney, Sims, Endel,

15    McDaniel, Neven, Baca,[1] Wallace, Casaleggio, and Whorton" should be made to answer because

16    they allowed inmates to purchase unlimited quantities of items similar to prayer oils or that they

17    allow other religious groups to possess oils and incense are not sufficient to proceed. He has not

18    identified who these individuals are or how they are involved in decisions which purportedly result

19    in religious discrimination.

20       As before, plaintiff may proceed on Count III against defendants Hooper, Hildreth, Foster,

21    McBurney, Schomig, and Sims, whom he identified as being responsible for cancelling the Ramadan

22    food service and chapel access and for colluding to conduct the "kangaroo court" classification

23    hearing. He has failed to provide any factual support showing that this claim should proceed against

24    defendants Baca, Budge, Coleman, Endel, McDaniel, Neven, Baca, Wallace, Casaleggio, and

25

26       [1] Plaintiff has named two different Baca defendants and one Hill-Baca. It is not clear which Baca is referred to in this claim or in various others. However, since the claims fail as to that defendant, it makes no difference to the outcome.

1    Whorton. These defendants need not answer on this claim.

2            Count IV

3            This count alleges retaliation and violation of High's rights to free religious expression and

4    grievance activity guaranteed by the First Amendment.  Incorporating the facts presented in Counts

5    I-III, High contends that defendants Hildreth, Hooper, Foster, Schomig, McBurney, Sims, Baca,

6    Budge, Coleman, Reed, Donat, Reverend Thompson, Walsh, and [Hill-]Baca are responsible for

7    retaliatory transfers from Southern Desert Correctional Center to High Desert State Prison to Nevada

8    State Prison due to his grievance and religious First Amendment exercises.   He claims that he

9    suffered an extended increase in custody status and lost his prison job because of the actions of the

10   defendants.  He further claims that he was transferred without proper notice.  This claim may

11   proceed against defendants Hildreth, Schomig, Sims, Hooper, and Foster.  Plaintiff has not stated

12   sufficient facts to proceed against defendants Baca, Budge, Coleman, Reed, Donat, Rev. Thompson,

13   Walsh, or Baca .  For all practical purposes, this is a duplicate of Count I.  The additional facts

14   complaining about confiscated videotapes is insufficient, as is the claim of collusion on a false

15   charge by Walsh and Baca.  As noted above, the AR 552.20 does not mandate a 48-hour notice

16   before an involuntary transfer.

17           Count V

18           Count V also raises a claim of retaliatory disciplinary charges designed to increase plaintiff's

19   classification points, because of his exercise of his First Amendment Rights to religious freedom and

20   grievances.

21           Plaintiff's amendment of this claim is insufficient on most points.  Plaintiff makes only bald

22   assertions as to defendants Budge, Coleman, Grafton, Byrne, Sherman, McDaniel, Endel, Reed, and

23   Donat.  His allegations as to Shorey provide no facts directly indicating that the work assignment or

24   the notice of charges were the result of the alleged defendants' animus against plaintiff for his

25   litigation.  Plaintiff has not shown that the work assignment was not merely a part of the normal

26   procedures in place to allow inmates to obtain paying jobs through demonstration that they are

5

1   willing to work. As to the allegation that Baca and Walsh colluded to bring false disciplinary charges

2   against him – related, the Court can only surmise to the circumstances described in Count IV

3   involving Walsh – which resulted in his transfer, petitioner has stated a claim for retaliation.

4          Thus, this claim may proceed only as to defendants Baca and Walsh.

5          <u>Count VI</u>

6          The details of this claim were set forth in the Court's original screening order.  Plaintiff has

7   not amended Count VI so as to state a claim.  This Count shall be dismissed.

8          <u>Count VII</u>

9          Plaintiff's next claim for relief is that his First Amendment rights to free religious expression

10  were violated by defendants Endel and McDaniel and Whorton.  High complains that these

11  defendants are "required to provide adequate meals for the thirty (30) day period <u>before</u> the Fajr

12  (morning prayer) and <u>after</u> sunset."  Complaint, p. 23.

13         High alleges that he notified these defendants that the daylight savings time change on

14  October 31, 2004 would impact the time for serving the morning meal.  He complains that the

15  defendants refused to alter the time for the meal service, despite his kites informing them of the

16  proper requirements.  High complains that defendants Endel, McDaniel and Whorton refused to

17  correct this constitutional violation.

18         Plaintiff has amended this claim to include events which occurred on or about September 21,

19  2005, when he was transferred to High Desert State Prison and placed at Level 3 Classification.

20  This, he claims denied him the an essential tenet of his religion: congregational prayer.  He baldly

21  alleges defendants Donat, McDaniel, Endel, and Whorton are responsible for the transfer and

22  classification and that defendants Baca, Neven, Wallace, and Casaleggio have devised a levels

23  system which doles out privileges, including religious services.  He contends these defendants have

24  utilized an "exaggerated response" to deny him religious services.

25         The circumstances described by plaintiff indicate that in many of the instances cited, there

26  existed a legitimate penological need for the scheduling and limited access to religious meals and

1    fasting.  The facts stated do not present a claim for either retaliation or free expression of religion, as

2    analyzed under *Turner v. Safley.*

3        Plaintiff has, however,  identified a religious mandate and a potential alternative solution to

4    the meal service problem.  Defendants Endel, McDaniel, and Whorton shall be required to answer on

5    this count.  Defendants Donat, Baca, Neven, Wallace, and Casaleggio need not answer on this count.

6        Count VIII

7        Count VIII raises a claim of an Eighth Amendment violation based on a denial of medical

8    care.  He claims that he suffered headaches and red eyes and was denied sufficient light by which to

9    do his legal work, read, etc.  Plaintiff acknowledges that he was seen by a doctor and scheduled for

10   an eye appointment.  He complains, however, that due to the "retaliatory transfers" he missed the

11   first opportunity to have his eyes examined.  He also acknowledges that he did receive a physical

12   exam and has had his eyes examined and been prescribed glasses.  Thus, plaintiff has not shown that

13   he was denied medical care or that he suffered more than a *de minimus* injury as a result of the delay.

14   He has not stated a claim under the Eighth or First Amendments on these facts.

15       Count IX

16       Count IX claims a violation of plaintiff's First, Eighth, and Fourteenth Amendment rights in

17   that he was refused recreational time because he would not remove his Kufi ("religious headgear")

18   when "walking across the tier to the shower, recreation yard, etc."

19       Plaintiff was offered a recreation period, but refused to remove his Kufi in order to

20   participate.  He declared that "he wouldn't compromise [his] freedom of religious expression" in

21   order to go outside.  He then requested that he be uncuffed and he remained in his cell, rather than go

22   to the recreation yard.

23       Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to

24   continuous and long-term segregation.  *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir.1979)

25   (Kennedy, J.) ("There is substantial agreement among the cases in this area that some form of regular

26   outdoor exercise is extremely important to the psychological and physical well being of the

1   inmates."). *See also Toussaint v. Yockey*, 722 F.2d 1490, 1492- 93 (9th Cir.1984) (upholding

2   preliminary injunction requiring outdoor exercise).  However, that is not what occurred here.  In this

3   instance, petitioner decided that he would not take the afforded opportunity to go outside because he

4   did not want to remove his religious headgear while he moved across the tier.

5        It is likely that the requirement that an inmate remove his headgear while handcuffed and

6   traveling across the tier is related to security concerns.  Plaintiff has not stated he would be unable to

7   wear the headgear once uncuffed and outside, only that he was required to remove it during the

8   movement.  Further, he has not identified the religious mandate which prohibits him from removing

9   the head gear.  This fails to state a claim.

10       Count X

11       This count attempts to present a claim of conspiracy and to capture any loose ends that

12  plaintiff might have dropped throughout the lengthy civil rights complaint.  It sets out only

13  generalities that have already been specifically presented in the earlier claims or makes

14  unsubstantiated claims that are not specific enough to state a claim for conspiracy.  *See Price v.*

15  *Hawaii,* 939 F.2d 702, 707-08 (9th Cir. 1991); *see also Mendocino Envtl. Ctr. v. Mendocino*, 14 F.3d

16  457, 461-62 (9th Cir. 1994).  Conclusory allegations are not sufficient to state a claim of conspiracy.

17  *See Radcliff v. Rainbow Constr. Co.,* 254 F.3d 772, 783-84 (9th Cir. 2001).   The count makes only

18  bald assertions and shall be dismissed.

19       **IT IS THEREFORE ORDERED** that the complaint and this action may proceed as to

20  Counts I, II, III, IV, V, and VII.  The following defendants shall answer on the following claims:

21       Count I: defendants Herndon, Hill-Baca, Tessier, Hildreth, Foster, and Hooper.

22       Count II: defendants McBurney, Schomig, and Sims.

23       Count III: defendants McBurney, Schomig, Sims, Hooper, Hildreth, and, Foster.

24       Count IV: defendants Hildreth, Schomig, Sims, Hooper, and Foster.

25       Count V: defendants Baca and Walsh.

26       Count VII: defendants Endel, McDaniel, and Whorton.

1      Any specific defendant not identified as required to answer in a particular claim is dismissed

2    from that claim.  All other defendants: Michael Budge, John Coleman, Jane Foraker-Thompson, Eric

3    Shory, Frank Sherman, F. Rogers, Quentine Byrne, William "Bill" Donat, Ken Grafton, Rex Reed,

4    Robert Kopp, Neil Marchington, Chaplain Dave Casaleggio, Dennis Wallace, Isodora Baca, Cole

5    Morrow, Dr. Hanf, and Dwight Neven, and any others not specifically named as required to answer

6    are **dismissed from the action**.

7          **IT IS FURTHER ORDERED** that Counts VI, VIII, IX, and X **are dismissed**.

8          **IT IS FURTHER ORDERED** that the defendants shall have thirty days from entry of this

9    order to file their responsive pleading to the Second Amended Complaint, as modified by this Order.

10         Dated this 20th day of December, 2005.

11

12

13    _____

14    LARRY R. HICKS
      UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

9