1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**

8                         **DISTRICT OF NEVADA**

9  JUAN X. HIGH,                    )
                                    )
10              Plaintiff,          )        3:05-cv-0241-LRH-RAM
                                    )
11  vs.                             )
                                    )        **ORDER**
12  JAMES BACA, et al.,             )
                                    )
13              Defendants.         )
    _____/

14

15          This is a civil rights action brought *pro se* by Juan X. High, a prisoner at the High

16  Desert State Prison in Nevada.  The action was originally filed in the Eighth Judicial District Court,

17  in Clark County, but was removed by defendants, who then sought this Court's intervention pursuant

18  to 28 U.S.C.  § 1915A.

19          Plaintiff's complaint asserts claims, pursuant to 42 U.S.C. § 1983, for violation of his

20  constitutional rights under the First Amendment and Eighth Amendment to the United States

21  Constitution.  He claims that he has been denied the opportunity to practice his religion without

22  interference and that he has been retaliated against for filing grievances related to his religious

23  practice and other conditions of his confinement.

24          The plaintiff's motion for temporary restraining order (TRO) and preliminary

25  injunction (docket #28) and motion to dispense with security (docket #27) were originally denied

26  without prejudice pending plaintiff filing a completed second amended complaint.  *See* Order

1  (docket #30) entered September 15, 2005.  Plaintiff has now renewed his motion for TRO and/or

2  Preliminary Injunction (docket #43).   Defendants have opposed the motion (docket #56) and

3  plaintiff has replied (docket #69).

4          I.     Legal Standard for TRO and Preliminary Injunction

5 

> A temporary restraining order may be granted without
> written or oral notice to the adverse party or that party's
> attorney only if (1) it clearly appears from specific facts
> shown by affidavit or by the verified complaint that
> immediate and irreparable injury, loss or damage will
> result to the applicant before the adverse party or that
> party's attorney can be heard in opposition, and (2) the
> applicant's attorney certifies to the court in writing the
> efforts, if any, which have been made to give the notice
> and the reasons supporting the claim that notice should
> not be required.

11  Fed. R. Civ. P. 65(b). An applicant for a temporary restraining order must meet one of two

12  alternative tests.  The first test requires that a court find (1) the moving party will suffer irreparable

13  injury if the injunctive relief is not granted; (2) there is a substantial likelihood that the moving party

14  will succeed on the merits; (3) in balancing the equities the nonmoving party will not be harmed

15  more than the moving party is helped; and (4) granting injunctive relief is in the public interest.

16  *Martin v. International Olympic Committee,* 740 F.2d 670, 674-75 (9th Cir.1984).  The alternative

17  test requires the moving party to demonstrate either (1) a combination of probable success on the

18  merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance

19  of hardship tips sharply in his favor.  *Id.* at 675.  The same test applies to the issuance of a

20  preliminary injunction.  *See Stanley v. University of Southern California,* 13 F.3d 1313 (9th Cir.

21  1994).

22        The court applies the first test identified above and finds that plaintiff has not

23  demonstrated he will suffer irreparable injury if injunctive relief is not granted, that his likelihood of

24  success on the merits is not substantial, that the balance of equities weighs in favor of the defendants,

25  and, finally, that granting the injunction would not, in these circumstances, serve the public interest.

26 

1          A.      Irreparable Injury

2          At the time the original motion for TRO or preliminary injunction was filed, plaintiff

3 was being housed at the Ely State Prison - a maximum security prison. At the time he renewed his

4 motion for preliminary injunction, plaintiff was being housed at the High Desert State Prison, a

5 medium security prison.  As of June 21, 2006, he attained a level 1 security classification and enjoys

6 all the privileges that are afforded inmates, including access to the law library, chapel, and all other

7 programs available to inmates.  *See* Affidavit of Isidro Baca, Exhibit C to Opposition to Motion for

8 TRO.   Plaintiff contends, without supporting evidence, that he is being held in a special

9 management unit which results in the continued denial of his access to Friday Prayer Services and

10 Ramadan meals "at the adequate time." *See* Reply to Opposition (docket #69), p. 6.  In fact, he

11 alleges the affidavit is "perjerious" in that he has not been classified as a level 1 inmate or that the

12 classification was done in his absence.  *Id.*

13          Without any examples or persuasive argument, plaintiff contends that he will suffer

14 irreparable injury because of the increase in his security status if the retaliatory transfer, completed

15 without due process, is allowed to stand.  He asserts that he will suffer atypical and significant injury

16 with the loss of the employment opportunities offered at Southern Desert State Prison (SDCC). He

17 contends that irreparable injury will occur if the Offender Management Division, headed by

18 Defendant Donat, is allowed "unchecked power" to transfer plaintiff to a maximum security prison

19 when his classification points are low enough to be housed at a low-medium security prison.  Finally,

20 he argues that he will suffer irreparable injury if defendants McDaniel and Endel are permitted to

21 deny him access to the law library, to chapel for Friday prayer services, to Ramadan meals at the

22 scheduled time, and to adequate outdoor exercise time.

23          These are all bald assertions which cannot withstand close review.  Prisoners are not

24 guaranteed and have no constitutional right to be housed at a particular prison or to be employed

25 while in prison.  *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983) (a convicted inmate is not protected

26 against transfer from one institution to another within the state); *Meachum v. Fano,* 427 U.S. 215

3

1   (1979); *Williams v. Sumner*, 648 F.Supp. 510, 512 (D. Nev. 1986) ("A state prisoner has no

2   independent constitutional right to employment").  Prison officials enjoy wide discretion in their

3   decisions for the secure and efficient operation of state prisons.  *Bell v. Wolfish,* 441 U.S. 520, 547

4   (1979); *see also Sandin v. Connor,* 515 U.S. 472, 482 (1995) ("federal courts ought to afford

5   appropriate deference and flexibility to state officials trying to manage a volatile environment").

6           Plaintiff has not demonstrated that he suffered any actual injury from the alleged

7   retaliatory transfer in that it has not chilled his ability to access the courts - as the litigation in this

8   matter clearly demonstrates.  The court, therefore, finds that no showing of irreparable injury has

9   been made.

10                   B.       Likelihood of Success on the Merits

11          The complaint alleges that plaintiff has been subjected to retaliatory transfers for

12   filing grievances, violating his rights under the First and Fourteenth Amendments.

13          "A prisoner suing prison officials under 1983 for retaliation must allege that he was

14   retaliated against for exercising his constitutional rights and that the retaliatory action does not

15   advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett*

16   *v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam); *see also Vignolo v. Miller,* 120 F.3d

17   1075, 1077-78 (9th Cir. 1997).  These claims must be evaluated in the light of deference that must be

18   accorded to prison officials.  *See Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995).  Finally, the

19   prisoner must demonstrate that his first amendment rights were actually chilled by the alleged

20   retaliatory action.  *See Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir. 2000).

21          The records before the court demonstrate that plaintiff was transferred from the

22   Southern Desert Correction Center because he had conflicts with staff.  Opposition to Motion for

23   TRO, Exhibit B, Chrono log dated: 12/17/2002.  The plaintiff's conflicts with staff are set out within

24   the Amended Complaint.  However, the decision to transfer High can as easily be described as one

25   that promotes the safe, secure, and efficient management of the prison by reducing the stress and

26   conflict between staff and inmates as it can be called a retaliatory move to punish plaintiff for

4

1   exercising his right to file grievances.

2           Plaintiff has not demonstrated that he has a substantial likelihood of success on the

3   merits of this claim.

4           High also complains that his religious experiences have been "qualitatively"

5   diminished because he has been denied the proper diet and special meal timing required by his

6   Muslim faith during the December Ramadan fast and because his access to chapel and to religious

7   oils has been reduced.

8           The right to free exercise of religion is one of our most preciously guarded rights.

9   *Ward v. Walsh*, 1 F.3d 873 (9th Cir.1993), *cert*. denied, 510 U.S. 1192 (1994).  However, "it is

10  necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate

11  correctional goals or to maintain prison security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).

12  *Turner v. Safley*, 482 U.S. 78, 89 (1987),  provides the test for balancing those interests: "When a

13  prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

14  related to legitimate penological interests."  *Turner* requires balancing the following four factors in

15  determining whether the facts alleged by High rise to a First Amendment violation: first, whether the

16  regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective;

17  second, whether prisoners have alternative ways of exercising the circumscribed right; third, whether

18  accommodating the right would have a deleterious impact on other inmates, guards, and the

19  allocation of prison resources generally; and fourth, whether alternatives exist that "fully

20  accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests."  *Id.*

21          As stated in the court's screening order, the facts provided in the complaint seem to

22  demonstrate a sound and valid penological basis for the actions taken by the defendants in

23  preparation and timing of the Ramadan meals.  Weighing the *Turner* factors on the facts, and

24  considering the evidence and argument provided by the defendants, it is quite clear that plaintiff has

25  little likelihood of success on the merits of this claim, as well.

26          Defendants have presented evidence which shows that High was among some 75

1   inmates at High Desert State Prison that participated in the Ramadan fast in 2005.  The documents

2   show that the prison administration went to significant trouble to accommodate the religious

3   practices of the Muslim inmates.  Plaintiff's bald claim that the food is still being served late is

4   belied by the exhibits presented by the defendants.

5          Plaintiff has shown little likelihood of success on the merits of his religious

6   interference claims as well.

7          C.      Balance of Equities

8          Plaintiff contends that the defendants will suffer no inequities if the preliminary

9   injunction is issued and he is transferred back to SDCC and given his old job as a law clerk.  His

10  arguments are undercut by the Supreme Court's direction that federal courts interfere as little as

11  possible in the operation and maintenance of state prisons.  *Wolff,* 441 U.S. at 547*; Sandin,* 515 U.S.

12  at 482*.*  Moreover, the cost of processing a transfer and potentially putting another inmate out of

13  plaintiff's former law clerk job would not be insignificant.

14         D.      Public Interests

15         Despite plaintiff's arguments to the contrary, public interest will not be served by the

16  issuance of an injunction.  The evidence before this court suggests that the prison administration is

17  making rational decisions for the operation of the Nevada prisons based on their concerns for safety,

18  security, and efficiency.  Plaintiff is presently in a medium security facility and appears to be

19  programming positively.  He participated in the Ramadan fast with some 74 other inmates at the

20  High Desert State Prison.  It is not in the public interest to interfere in the process until such time as

21  the plaintiff has proved his claims in court.

22         II.     Conclusion

23         The renewed motion for issuance of a TRO or preliminary injunction shall be denied.

24  Plaintiff has failed in his burden to show that he will suffer irreparable injury, that he has a strong

25  likelihood of success on the merits, that the equities weigh in his favor or that public interest is best

26  served by granting his motion.

1       **IT IS THEREFORE ORDERED** that Motion for Temporary Restraining Order and

2  Preliminary Injunction (docket # 28) is **DENIED**.

3       Dated this 6th day of February, 2007.

4

5

6       _____

7       LARRY R. HICKS
         UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26