1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JUAN X. HIGH,                                    )          3:05-CV-00241-LRH (RAM)
                                                 )
        Plaintiff,                             )
                                                 )
    vs.                                          )          **REPORT AND RECOMMENDATION**
                                                 )          **OF U.S. MAGISTRATE JUDGE**
JAMES BACA, et al.,                              )
                                                 )
        Defendants.                            )
_____ )

      This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

      Before the court is Defendants' Motion to Dismiss (Doc. #113). Plaintiff opposed the motion (Doc. #131); Defendants did not reply.

      The court has thoroughly reviewed the pleadings and recommends that Defendants' motion be granted in part and denied in part consistent with the terms of this order.[1]

## I. BACKGROUND

**A.  PROCEDURAL BACKGROUND**

      Plaintiff filed a civil rights complaint in the Eighth Judicial District Court of the State of Nevada on January 10, 2005 against numerous defendants and the State of Nevada (Doc. #2 at 5-12). Defendants petitioned for removal to federal court on April 22, 2005 (*Id.*) and

_____

[1]Both Defendants and Plaintiff submitted matters outside the pleadings, which the court considered; therefore, Defendants' motion is treated as a motion for summary judgment pursuant to FED. R. CIV. P. 56.

1    the Complaint was screened under 28 U.S.C. § 1915A on June 23, 2005 (Doc. #15).  The court

2    found that certain claims and defendants must be dismissed for failure to state a claim upon

3    which relief  may be granted (*Id.*).

4         Plaintiff filed an Amended Complaint on September 8, 2005 (Doc. #29) and a Second

5    Amended Complaint on October 20, 2005, which is the basis for the instant motion (Doc.

6    #32).  The court permitted Plaintiff to proceed on the following Counts as to the following

7    Defendants[2]:

8         1)    Count I as to Defendants Herndon, Hill-Baca, Tessier, Hildreth, Foster and

9               Hooper;

10        2)    Count II as to Defendants McBurney, Schomig and Sims;

11        3)    Count III as to Defendants McBurney, Schomig, Sims, Hooper, Hildreth and

12              Foster;

13        4)    Count IV as to Defendants Hildreth, Schomig, Sims, Hooper and Foster;

14        5)    Count V as to Defendants Baca and Walsh; and

15        6)    Count VII as to Defendants Endel, McDaniel and Whorton.

16   (*Id.*).

17   **B.    FACTUAL BACKGROUND**

18        Plaintiff is a prisoner at High Desert State Prison (HDSP) in Indian Springs, Nevada

19   in the custody of the Nevada Department of Corrections (NDOC) (Doc. #32).  Plaintiff brings

20   his Amended Compliant pursuant to 42 U.S.C. § 1983, alleging the following violations of his

21   constitutional rights:

22        1)    Count I – January 13, 2003 - Southern District Correctional Center (SDCC)

23              (alleging Defendants retaliated against him for filing grievances and/or

24              practicing his religion and denied him due process) (*Id.* at 12).

25

26   _____

27   [2]For simplicity, when the court refers to "Defendants" under a specific claim, the court is referring only
     to those named defendants under that claim.

28                                          2

1       2)    Count II -  December 9, 2003 - HPSP (alleging Defendants denied Plaintiff his right to exercise his religion, violated his right to equal protection and failed to keep an adequate grievance system) (Doc. #32 at 19).

3)    Count III -  January 13, 2004 – HDSP (alleging Defendants retaliated against him for practicing his religion and violated his right to equal protection) (*Id*. at 25).

4)    Count IV -  April 15, 2004 - HDSP (alleging Defendants retaliated against him for filing grievances and practicing his religion and violated his right to equal protection) (*Id*. at 31)

5)    Count V -  May 6, 2004 through August 3, 2004 - NSP (alleging Defendants retaliated against him for exercising his First Amendment rights) (*Id*. at 36).

6)    Count VII - October 31, 2004 through October 5, 2005 - HDSP (alleging Defendants denied Plaintiff the right to exercise his religion and violated his right to equal protection (*Id*. at 41).

Plaintiff makes the following requests for relief: (1) declaratory relief declaring Defendants' actions unconstitutional; (2) punitive damages in the amount of ten thousand (10,000) dollars against each defendant found guilty; (3) exemplary damages in the amount of ten thousand (10,000) dollars against each defendant found guilty; (4) one hundred (100) dollars a day against each defendant found guilty for the days Plaintiff spent in segregation totaling four-hundred-thirteen (413) days; (5) thirty-five (35) dollars a month against each defendant found guilty for lost wages; (6) temporary restraining order or preliminary injunction enjoining Defendants from retaliatorily transferring him; (7) pre-judgment interest; (8) post-judgment interest; (9) "out-of-pocket" costs for litigating this suit; and (10) court costs, fees and reasonable attorney's fees (*Id*. at 61-63).

///

///

///

3

## II.  STANDARD FOR SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477 U.S. at 248.  As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual

4

disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

### III.  DISCUSSION

Defendants move for dismissal on each of Plaintiff's claims. First, Defendants contend that some of Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel because Plaintiff already litigated the issues, including: the issue regarding the alleged retaliatory transfer in 2004; the issue regarding his law clerk job; and the issue regarding the October and December 2003 Ramadan meals and the cancellation of said meals (Doc. #113 at 9-10). Next, Defendants contend that some of Plaintiff's claims are barred by the applicable statute of limitations, and those that are not time-barred nevertheless fail because Defendants are entitled to immunity (*Id.* at 11-12). Finally, Defendants contend that Plaintiff's First Amendment retaliation claims and freedom of religion claims each fail as a matter of law (*Id.* at 14-29).

Plaintiff argues that res judicata and collateral estoppel are both inapplicable to his claims (Doc. #131 at 15-16). Plaintiff further argues that his claims are not time-barred and Defendants are not entitled to immunity (*Id.* at 18-20). Finally, Plaintiff argues there are genuine issues of material fact regarding his retaliation, conspiracy and freedom of religion claims; therefore, summary judgment is inappropriate (*Id.* at 23-55).

### A.    RES JUDICATA AND COLLATERAL ESTOPPEL (CLAIM & ISSUE PRECLUSION)

Res judicata is an umbrella term that often refers to the concept that a party cannot relitigate a cause of action or issue that has already been determined by a court. *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 835, 963 P.2d 465, 473 (1998). "Claim preclusion," *i.e.*, res judicata, and "issue preclusion," *i.e.*, collateral estoppel, are two subspecies of that rule.  *Id.*

1   Under Nevada law, three basic elements are required for both doctrines:

2       (1) the issue decided in the prior litigation must be identical to the issue
3       presented in the current action; (2) the initial ruling must have been on the
        merits and have become final; and (3) the party against whom the judgment
        is asserted must have been a party or in privity with a party to the prior
4       litigation.

5   *Id.*; *accord Univ. of Nev. v. Tarkanian*, 110 Nev. 581, 598-599, 879 P.2d 1180, 1191 (1994);

6   Restatement (Second) Judgments § 123 (1995). The two doctrines are not the same, however.

7   Issue preclusion has an additional element, which requires that the issue in question must

8   have been "actually and necessarily litigated" in the previous case. *Executive Mgmt., Ltd.*,

9   114 Nev. 823, 835, 963 P.2d 465, 473. In contrast, claim preclusion "embraces all grounds

10  of recovery that were asserted in a suit, as well as those that could have been asserted."

11  *Tarkanian*, 110 Nev. 581, 598-599, 879 P.2d at 1191.

12      Defendants take the position that Plaintiff is "alleging the same violations dealing with

13  some of the same incidents" in this action as previously asserted in a prior action (Doc. #113

14  at 10). Specifically, Defendants assert Plaintiff's March 5, 2002 Complaint, filed in the Eighth

15  Judicial District Court, addressed the alleged retaliatory transfer in 2004 and the issue

16  involving Plaintiff's law clerk job (*Id.*). Additionally, Defendants assert Plaintiff's March 20,

17  2003 Writ of Mandamus, also filed in the Eighth Judicial District Court, addressed conditions

18  during the October and December 2003 months regarding the cancellation of the Ramadan

19  meals (*Id.*). Thus, Defendants assert *issue preclusion* bars Plaintiff from relitigating these

20  issues in this suit.

21      Plaintiff argues that he only utilized certain incidents to show a pattern of

22  chronological events in prior pleadings and that none of the parties in this action were parties

23  in the prior actions (Doc. #131 at 15). Plaintiff further argues that the prior courts did not

24  consider the facts regarding these issues and his present claims do not arise out of the same

25  transaction or series of transactions as the prior actions (*Id.*). Finally, Plaintiff argues the

26  prior courts did not address the merits of Plaintiff's claims (*Id.* at 16-17).

27

28                                                  6

1
2
3
4

An issue is necessarily and actually litigated if the "court in the prior action addressed and decided the same underlying factual issues." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 235 (Nev. 2005) (citing *LaForge v. State, Univ. & Cmty. Coll. Sys. of Nev.*, 997 P.2d 130, 134 (Nev. 2000 )).

5

**1.    March 5, 2002 Complaint**

6
7
8
9
10

Defendants assert Plaintiff addressed the 2004 alleged retaliatory transfer issue and the issue of his law clerk job in one of his motions in the previous suit (Doc. #113 at 10). Defendants then assert the court dismissed the case without prejudice on June 5, 2006 (*Id.*). Therefore, Defendants argue these issues are precluded.  Defendants argument fails for two reasons.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

First, Defendants must show *the court* addressed the issues and those issues were necessarily and actually litigated in the prior court action, not simply that *Plaintiff addressed* the issues in his pleadings.  Defendants failed to provide any documents (namely, the motion and court order referenced in the instant motion) to support their argument.  Defendants attached the following documents to the instant motion regarding this issue: 1) Plaintiff's March 5, 2002 Complaint, which clearly does not address an issue that took place in 2004; 2) Plaintiff's Motion to Show Cause, dated July 13, 2004, in which Plaintiff does allege being "retaliatory transferred" twice since filing his Complaint; 3) Plaintiff's Ex parte Motion for Telephonic Conference, dated August 6, 2004, in which Plaintiff again alleges being "retaliatory transferred" from NSP to ESP; and 4) the district court's July 13, 2004 Decision and Order, accepting Plaintiff's showing of cause and deciding not to dismiss the case, noting the action was on file for over two (2) years with no evidence the defendants had even been served (Doc. #113, Exh. I).  These documents, alone, do not show the 2004 transfer and law clerk job issues were necessarily and actually litigated.  As previously stated, it is not enough that Plaintiff address an  issue in his pleadings; the court must have actually litigated the issue.

27
28

1        Second, Defendants indicate the court dismissed the action *without prejudice* (*Id.* at

2    10).  In Nevada, "[a] dismissal without prejudice is not a final adjudication on the merits."

3    *Trustee of Hotel and Restaurant Employees and Bartenders Intern. v. Royco, Inc.*, 101 Nev.

4    96, 98, 692 P.2d 1308, 1309 (1985) (citing *Lighthouse v. Great W. Land & Cattle*, 88 Nev.

5    55, 493 P.2d 296 (1972)).  Thus, the court's dismissal without prejudice does not satisfy the

6    second element essential to both doctrines under Nevada law (that the initial ruling must

7    have been on the merits and have become final).  Accordingly, Defendants have failed to show

8    the issues of Plaintiff's alleged 2004 retaliatory transfer and law clerk job are barred by the

9    doctrines of res judicata or collateral estoppel.

10                    **2.    March 20, 2003 Writ of Mandamus**

11        The record shows Plaintiff specifically addressed cancellation of the December 2003

12    Ramadan meals in his Writ of Mandamus (Doc. #113, Exh. I).  On June 14, 2004, the Eighth

13    Judicial District Court dismissed Plaintiff's writ for failure to comply with administrative

14    procedures and failure to exhaust administrative remedies (*Id.*).  The district court further

15    found that, since the plaintiffs[3] were transferred to separate institutions, their claims were

16    moot (*Id.*).

17        Nevada law has not expressly addressed whether dismissal of a writ of mandamus for

18    failure to exhaust administrative remedies bars relitigation of the claims asserted in the writ.

19    However, Nevada law indicates relitigation would not be barred.  The Nevada Supreme Court

20    very recently opined that "[w]hile in the past we have held that the failure to exhaust

21    administrative remedies deprives the district court of subject-matter jurisdiction, more

22    recently, in *City of Henderson v. Kilgore*, we noted that failure to exhaust all available

23    administrative remedies before proceeding in district court renders the matter unripe for

24    district court review.  Nevertheless, whether couched in terms of subject-matter jurisdiction

25

26        ─────────────

27        [3]The Writ of Mandamus was brought by Plaintiff High, as well as Charles X. Cook and Ronell X. Williams (Doc. #113, Exh. I).

28                                                8

1   or ripeness, a person generally must exhaust all available administrative remedies before

2   initiating a lawsuit, and failure to do so renders the controversy nonjusticiable." *Allstate Ins.*

3   *Co. v. Thorpe,* ---- Nev. ----, ----, 170 P.3d 989, 993 (2007).  A nonjusticiable controversy

4   cannot be decided on the merits.

5          The Ninth Circuit also holds that "[d]ismissal for failure to exhaust administrative

6   remedies is without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). As

7   explained *supra*, under Nevada law, a dismissal without prejudice is not a final adjudication

8   on the merits." *Royco, Inc.*, 101 Nev. 96, 98, 692 P.2d 1308, 1309.  Thus, Defendants have

9   again failed to satisfy the second element essential to both doctrines under Nevada law (that

10  the initial ruling must have been on the merits and have become final).  Accordingly, under

11  these facts, Defendants have failed to show res judicata or collateral estoppel bars Plaintiff's

12  claims previously asserted in his writ.

13         For the reasons set forth above, summary judgment based on the doctrines of res

14  judicata and collateral estoppel should be **DENIED**.

15  **B.    STATUTE OF LIMITATIONS**

16         Section 1983 does not contain its own statute of limitations; therefore, the federal

17  courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims

18  in the forum state. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985).  If there are multiple

19  statutes of limitations for various types of personal injury claims, the residual statute of

20  limitations for personal injury claims is to be applied. *Owens v. Okure*, 488 U.S. 235 (1989).

21  If there is no residual statute of limitations for personal injury claims, the general residual

22  statute of limitations applies. *Id*.

23         In Nevada, the applicable residual statute of limitations for personal injury claims

24  applicable to § 1983 claims is two years. NEV. REV. STAT. § 11.190(4)(e); *Perez v. Seevers,* 869

25  F.2d 425, 426 (9th Cir. 1989).  Therefore, under the applicable statute of limitations, Plaintiff

26  had two years from the time of the alleged injury within which to commence the instant suit.

27  *Id*.  An action is deemed to be commenced when the complaint is filed. *Id*.  Plaintiff alleges

28                                                    9

1    several separate injuries; thus, for each injury Plaintiff must show either: 1) that Defendants'

2    acts alleged to have caused Plaintiff's injury occurred within two years of filing his Complaint;

3    or 2) that Plaintiff can invoke an exception to the statute of limitations.  Plaintiff has not

4    invoked an exception to the statute of limitations; therefore, the relevant inquiry is simply

5    whether the injuries occurred within two years of the filing of Plaintiff's initial Complaint.

6         Plaintiff filed this action on January 10, 2005. Accordingly, Defendants correctly assert

7    that any and all alleged injuries Plaintiff makes that date back before January 10, 2003 are

8    time-barred (Doc. #113 at 12).  Plaintiff admits that the incidents that happened in 2001,

9    which were the subject of his March 5, 2002 action, are time-barred (Doc. #131 at 16). Plaintiff

10   asserts those previous claims are unrelated to this case (*Id*.).

11        Plaintiff's Second Amended Complaint asserts the following "instances of conduct"

12   constitute violations of Plaintiff's constitutional rights (injuries):

13        1)      December 2003 – cancellation of Ramadan fast;

14        2)      January 13, 2003 - retaliatory transfer from SDCC to HDSP**;**

15        3)      January 13, 2004 – retaliatory placement in administrative segregation**;**

16        4)      April 16, 2004 – retaliatory transfer from HDSP to NSP and placement on Level

17                2;

18        5)      April 28, 2004 – threat made by Defendant Baca about filing grievances;

19        6)      June 15, 2004 – threat made by Defendant Baca for asking about religious

20                matters;

21        7)      June 17, 2004 – false disciplinary charge issued by Defendants Walsh and Baca;

22        8)      June 28, 2004 – conviction for false disciplinary charges;

23        9)      August 3, 2004 – retaliatory transfer to ESP; and

24        10)     October 31, 2004 – denial of Ramadan meals at appropriately scheduled time.

25   (Doc. #131 at 19-20).

26        Based on the applicable two-year statute of limitations, the only injury that is time-

27   barred is the December 2003 cancellation of the Ramadan fast (Count II) (Doc. #32 at 19).

28                                           10

1   The remainder of Plaintiff's claims took place after January 10, 2003. Accordingly, summary

2   judgment as to Count II should be **GRANTED**.

3   **C.   IMMUNITY**

4        **1.   Official Capacity**

5       Section 1983 imposes a duty on persons acting under color of state law not to deprive

6   another person "of any rights, privileges or immunities secured by the Constitution and laws."

7   42 U.S.C. § 1983 (1988). However, "neither a State nor its officials acting in their official

8   capacities are 'persons' under § 1983." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58,

9   71 (1989). "Of course a state official in his or her official capacity, when sued for injunctive

10   relief, would be a person under § 1983 because 'official-capacity actions for prospective relief

11   are not treated as actions against the State." *Will*, 491 U.S. at 71, n.10 (citing *Kentucky v.*

12   *Graham*, 473 U.S. 159, 167, n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)).

13       Defendants assert they are immune from suit in their official capacities because Plaintiff

14   is essentially suing the state and it is perfectly clear from Plaintiff's prayer for relief that money

15   damages are his preferred means of relief (Doc. #113 at 12).

16       Plaintiff argues he is suing Defendants in their official capacities for prospective

17   injunctive relief (Doc. #131). Namely, Plaintiff asserts he is seeking a declaratory judgment,

18   temporary restraining order or preliminary injunction, and a permanent injunction preventing

19   the continuation of the alleged retaliatory transfers (*Id.* at 20).

20       To the extent Plaintiff is suing Defendants in their official capacities for prospective

21   injunctive relief, Defendants are not entitled to immunity. Official-capacity actions for

22   prospective relief are not treated as actions against the State; therefore, Defendants' argument

23   fails. Accordingly, Defendants' request that the court find them immune from suit in their

24   official capacities should be **DENIED**.

25       **2.   Qualified Immunity**

26       "Qualified immunity protects government officials ... from liability for civil damages

27   insofar as their conduct does not violate clearly established statutory or constitutional rights

28

of which a reasonable person would have known." *Phillips*, 477 F.3d at 1079.  Under certain circumstances state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 879 (9th Cir. 2002).  When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir. 2001).  Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In analyzing whether the defendant is entitled to qualified immunity, the court must consider two issues.  First, the court must make a threshold inquiry into whether the Plaintiff alleges deprivation of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 736 (2000); *Saucier,* 533 U.S. at 201.  If no constitutional violation occurred, the court need not inquire further. *Saucier*, 533 U.S. at 201.  If a constitutional violation did occur then the court must next establish whether the right was clearly established at the time of the alleged violation such that the official could have reasonably, but mistakenly, believed that his or her conduct did not violate a clearly established right.  *Saucier*, 533 U.S. at 202.

Defendants contend that "Plaintiff cannot elicit sufficient evidence to demonstrate that there was any unlawful conduct by Defendant, much less, that any constitutional deprivation has occurred." (Doc. #113 at 13).  Defendants are simply arguing that no constitutional violation occurred and do not address whether, in the event the court deems a constitutional violation did occur, the right was clearly established.  In any event, the Ninth Circuit firmly recognizes that "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Rhodes v. Robinson*, 408 F.3d 559, 569 -570 (9th Cir. 2005).  Therefore, under these facts, if the court finds a constitutional violation did occur, Defendants are not entitled to qualified immunity.

1    As discussed more fully *infra*, Plaintiff has sufficiently pled a constitutional violation

2    in Claims I, IV and VII.  Accordingly, summary judgment on the basis of qualified immunity

3    as to these claims should be **DENIED**.

4    **D.    FIRST AMENDMENT (RETALIATION) – Counts I, III, and IV**

5        Inmates retain their first amendment rights, even within the expected conditions of

6    confinement. *Hines v. Gomez*, 108 F.3d 265, 270 (9th Cir. 1997).  It is well established that

7    when prison officials retaliate against inmates for exercise of the inmate's first amendment

8    rights, such as filing a grievance against a prison guard, the inmate has a claim cognizable

9    under section 1983. *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994), *see also Rhodes,*

10   408 F.3d 559, 567 (9th Cir. 2005)*(accepting this proposition and citing decisions of other

11   circuits that accord).

12       In order to prove a claim of First Amendment retaliation, an inmate plaintiff must (1)

13   assert "that a state actor took some adverse action against an inmate (2) because of (3) that

14   prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

15   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

16   goal." *Rhodes,* 408 F.3d at 567-68.  Further, in pursuing a claim of retaliation, "[t]he plaintiff

17   bears the burden of pleading and proving the absence of legitimate correctional goals for the

18   conduct of which he complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)**.**

19       **1.    Counts I and IV[4]**

20       Defendants assert that Plaintiff has failed to show Defendants Hildreth, Hooper,

21   Schomig, Sims, Herndon, Hill-Baca, Foster and Tessier violated Plaintiff's First and

22   Fourteenth Amendment rights against retaliation by transferring him for filing grievances as

23   alleged in Counts I and IV (Doc. #113 at 14).  Defendants further assert that Plaintiff has no

24   constitutional right to be incarcerated in a specific institution and Defendants had a legitimate

25   penological interest in transferring him; Plaintiff has no constitutional right to a particular

26   _____

27       [4]Count IV is a duplicate of Count I (Doc. #33 at 5).

28                                          13

1    custody level and Defendants had a penological interest in increasing his custody level; and

2    Plaintiff has no constitutional right to employment (Doc. #113 at 14-19).

3         Plaintiff essentially argues that he understands he does not have a constitutional right

4    to a specific institution, custody level or employment (Doc. #131 at 26-34). Plaintiff contends,

5    however, that he does have a right not to be retaliated against for filing grievances and

6    Defendants retaliated against him for filing grievances by transferring him, thereby, increasing

7    his custody level[5] and terminating his employment[6] (*Id.*).

8         As previously stated, a claim of retaliation for filing a prison grievance is a valid cause

9    of action under § 1983. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995); *Austin v.*

10   *Terhune*, 367 F.3d 1167, 1170 (9th Cir. 2004). Retaliation claims for filing prison grievances

11   raise constitutional questions beyond the due process deprivation of liberty rejected in *Sandin*.

12   Prisoners "retain other protections from arbitrary state action.... They may invoke the First

13   and Eighth Amendments and the Equal Protection Clause." *Sandin v. Conner*, 515 U.S. 472,

14   487-488, n.11 (1995). Thus, to succeed on his retaliation claims, Plaintiff need not establish

15   independent constitutional interests in his institutional assignment, level assignment and

16   employment; rather, Plaintiff need only show that "prison authorities' retaliatory action did

17   not advance legitimate goals of the correctional institution or was not tailored narrowly

18   enough to achieve such goals." *Rizzo*, 778 F.2d 527, 532 (9th Cir. 1985) (citing *Franklin v.*

19   *Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)).

20        It would be illegal for Defendants to transfer Plaintiff solely in retaliation for his

21   exercise of protected First Amendment rights. Defendants must have transferred Plaintiff

22

23        [5] Plaintiff alleges the increases in his custody level were a direct result of the alleged retaliatory transfers;

24   however, Plaintiff appears to allege Defendants intentionally transferred him, at least partly, in order to increase
     his custody level. Therefore, the court addresses these issues together.

25

26        [6] Plaintiff does not allege Defendants retaliated against him by terminating his employment; rather,

27   Plaintiff alleges the loss of his employment was a mere result an alleged retaliatory transfer (Doc. #131 at 33).
     Thus, the court does not consider this a separate issue.

28                                              14

based on legitimate correctional goals. "Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of institutional security." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995).  Defendants assert each of Plaintiff's transfers were based on legitimate correctional goals of the institution.  In order to dispute Defendants' assertion and show a constitutional violation, Plaintiff has the burden of proving he would not have been transferred but for the exercise of his constitutionally protected rights.

The following transfers are in dispute.

a.   January 13, 2003 Transfer to HDSP / Custody Level

Defendants assert Plaintiff was transferred from SDCC to HDSP because he had problems with several staff members (Doc. 113 at 16).  Chrono entries, dated December 17, 2002 and January 13, 2003, also indicate Plaintiff was transferred from SDCC to HDSP due to issues he had with several officers and staff members (Doc. 56, Exh. B).

Plaintiff alleges that, on January 13, 2003, he was transferred from SDCC to HDSP for filing nine (9) grievances against Defendants Hildreth, Hooper, Foster, Tessier, Herndon and Hill-Baca from October 2002 through December 2002 (Doc. #32 at 14-15).  Plaintiff further alleges, on December 17, 2002, Defendants Herndon and Hill-Baca approached him in the law library and expressed concern that he would be written up for filing frivolous grievances (*Id.* at 13).  According to Plaintiff, Defendant Hill-Baca told him to request a transfer if he was not happy there and essentially told him a transfer was inevitable (*Id.*).  Furthermore, Defendant Hill-Baca purportedly told Plaintiff to stop filing grievances because the staff were upset about the number of grievances filed (*Id.*).  Plaintiff then alleges that Defendants Hildreth, Foster and Hooper informed him that they were fed up with his grievances and Defendant Hildreth stated he wanted Plaintiff out of SDCC because he was driving the staff crazy by filing so many grievances (*Id.* at 14).  Plaintiff contends Defendants Hildreth, Hooper, Foster, Hill-Baca, Herndon and Tessier colluded to retaliate against him by transferring him to HDSP (*Id.*).  Plaintiff asserts that, upon his arrival to HDSP, on January 13, 2003,

15

1    Defendants Schomig, McBurney and Sims placed him in administrative segregation and then,

2    on January 14, 2003, moved Plaintiff to Level III (Doc. #32 at 15).  Plaintiff further asserts

3    he spent ninety (90) days on Level II (*Id*.).

4    Clearly Plaintiff had issues with officers and staff members, hence his filing of

5    numerous grievances against them.  Although Defendants assert they transferred Plaintiff

6    simply because he had issues with several staff members, Defendants have not disputed

7    Plaintiff's allegation that those issues involved filing grievances against those staff members.

8    Viewing the facts in the light most favorable to Plaintiff, there are genuine issues of material

9    fact as to whether Defendants transferred Plaintiff and increased his custody level because

10    staff members had issues with Plaintiff due to his filing numerous grievances against them.

11    Thus, Plaintiff has met his burden of pleading the absence of legitimate correctional goals.

12                    b.    April 15, 2004 Transfer to NSP / Custody Level

13    Defendants assert Plaintiff was transferred to NSP because he named two (2) enemies

14    at HDSP and was possibly involved in an escape attempt (Doc. #113 at 16).

15    Plaintiff alleges that, on April 15, 2004, he was transferred from HDSP to NSP and,

16    once again, placed in Level II custody (Doc. #32 at 31).  Plaintiff further alleges he was

17    transferred for filing grievances concerning the Nation of Islam and the cancellation of the

18    Ramadan fast (*Id*. at 34).  Plaintiff asserts he was placed under the supervision of Officer

19    Shorey due to filing previous grievances against him in 2000 (*Id*.).  Plaintiff then alleges, on

20    April 28, 2004, that Defendant Hill-Baca threatened Plaintiff telling him his days were

21    numbered if he filed grievances at NSP (Doc. #32 at 34).

22    At first glance, it would appear the decision to transfer Plaintiff was based on legitimate

23    correctional goals; however, the record indicates there was no evidence to support the alleged

24    escape attempt and there are genuine issues of material fact as to whether Plaintiff had

25    separatee issues.  Prior to Plaintiff's transfer to NSP, NSP officials were informed by the

26    AWO's secretary that Plaintiff was being transferred for naming two (2) enemies (Doc. #56,

27    Exh. B (April 14, 2004)).  After the transfer, on April 22, 2004, NSP officials phoned HDSP

28                                                      16

because there was no information in the chrono entries regarding the facts underlying the investigation (Doc. #56, Exh. B). AWO McBurney informed NSP that Plaintiff and others were planning to escape by holding a fundraiser and smuggling hand-cuff keys in pies (*Id.*). Apparently, requests for fundraisers were found on the chapel's computer and Plaintiff and the others were placed in administrative segregation pending investigation (*Id.*). During placement in administrative segregation, the parties purportedly began identifying one another as enemies (*Id.*). Plaintiff was then transferred to NSP. Plaintiff disputes naming enemies (Doc. #131 at 4).

The two inmates Defendants contend Plaintiff named as enemies appear to be the same inmates Defendants accused Plaintiff of colluding with in planning an alleged escape attempt. Viewing the facts in the light most favorable to Plaintiff, there are genuine issues of material fact as to whether Plaintiff was transferred and placed in a higher custody level for naming two (2) enemies or in retaliation for filing grievances. Thus, Plaintiff has met his burden of pleading the absence of legitimate correctional goals.

### c. August 3, 2004 Transfer to ESP / Custody Level

Defendants assert Plaintiff was transferred to ESP due to an MJ-30 violation, which involved sexually inappropriate behavior with a female caseworker at NSP. Defendants further assert NSP was concerned that Plaintiff would continue to harass and/or stalk the caseworker if he was returned to the general population yard (Doc. #113 at 16).

Plaintiff alleges that, on August 3, 2004, he was transferred from disciplinary segregation at NSP with two (2) months remaining on his sanction to ESP, a maximum security prison, after telling Defendant Hill-Baca that he was not Allah (Doc. #32 at 35). Plaintiff further alleges false disciplinary charges were brought against him in order to increase his classification status because of filing grievances (Doc. #131-2 at 5).

The record shows a notice of charges was filed against Plaintiff regarding an incident with Defendant Walsh in which Plaintiff was charged with inappropriate sexual behavior due to events that took place on June 17, 2004 (*Id.* at 5). On that date, Defendant Walsh

17

summoned Plaintiff to her office to discuss an informal grievance Plaintiff had submitted on June 3, 2004 (Doc. #131-2 at 5).  Defendant Walsh asserts speaking with Plaintiff about various topics, including astronomy, smoking, a religious book, drugs, dictionaries and knowledge (*Id.*).  Defendant Walsh contends Plaintiff told her she was a "croquette", which she asserts is defined as "flirt." (*Id.*).  Defendant Walsh further contends Plaintiff elaborated on his interpretation of the definition explaining she was nice, in a professional manner, and remarked that she was not wearing any jewelry (apparently Defendant Walsh was actually wearing earrings and a watch, but no rings) (*Id.*).  Defendant Walsh received a phone call and needed to leave the office to tend to another inmate (*Id.*).  Before she was able to leave, Plaintiff apparently informed Defendant Walsh that he could not leave at that moment and motioned to Defendant Walsh to look at his pelvis area where he had an erection (*Id.* at 6).  Defendant Walsh asserts she felt extremely uncomfortable and immediately wanted to exit the unit (*Id.*).  She further asserts that she reached past Plaintiff, grabbed the doorknob, opened the door, and requested Plaintiff exit the office (*Id.*).  Plaintiff exited and Defendant Walsh also immediately exited the office (*Id.*).  Plaintiff was subsequently charged with a violation of MJ-30[7] and MJ-41[8]. (*Id.* at 16).

The record indicates the hearing officer found nothing in the record to support the MJ-30 charge; but, did find Plaintiff violated the MJ-41 charge and sentenced Plaintiff to 120-days disciplinary action (Doc. #131, Exh J (cassette tape)).  Despite insufficient evidence to support the MJ-30 charge, Defendants assert Plaintiff was transferred to ESP "due to an MJ-30 on a female caseworker." (Doc. #113 at 16).  Viewing the facts in the light most favorable to Plaintiff, there are genuine issues of material fact as to whether Defendants transferred

[7]MJ-30 is defined as "[s]exually stimulating activities, including but not limited to caressing, kissing or fondling, except as authorized by Departmental visitation regulations." Administrative Regulation 707.

[8]MJ-41 is defined as "[g]athering around, blocking, or impeding any correctional employee or visitor, in a threatening or intimidating manner and exhibiting conduct, which causes the person to fear for his safety." *Id.*

1     Plaintiff to advance legitimate goals of the correctional institution and the transfer was

2     narrowly tailored enough to achieve such goals, *Rizzo*, 778 F.2d at 532, or whether Defendants

3     transferred Plaintiff in retaliation for filing grievances. Thus, Plaintiff has met his burden of

4     pleading the absence of legitimate correctional goals.

5         For the reasons set forth above, summary judgment on Counts I and IV should be

6     **DENIED**.

7         **2.**    **Count III**

8         Defendants assert Plaintiff failed to show Defendants Foster, Hildreth and Hooper were

9     personally involved in or caused Plaintiff's injuries; therefore, Plaintiff cannot show they were

10    the cause in fact or proximate cause of Plaintiff's injuries as alleged in Count III (Doc. #113

11    at 22). Furthermore, Defendants assert Plaintiff cannot show they retaliated against him or

12    that there is a causal connection between the alleged retaliatory conduct and the action that

13    purportedly provoked the retaliation (*Id*. at 24).

14        Plaintiff asserts in his Second Amended Complaint that Count III is "for background

15    info only to show a retaliatory pattern." (Doc. #32 at 28). Thus, Plaintiff admits Count III is

16    not a valid claim. Accordingly, summary judgment on Count III should be **GRANTED**.

17    **E.**   **CONSPIRACY – Count V**[9]

18        Defendants assert Plaintiff has failed to show Defendants Walsh and Baca retaliated

19    against Plaintiff by bringing false disciplinary charges against him and Plaintiff has failed to

20    allege any facts supporting his conspiracy allegations (Doc. #113 at 26-27).

21        Plaintiff argues he has pled sufficient facts to support his conspiracy allegations (Doc.

22    #131-2 at 11). Specifically, Plaintiff alleges Defendants Walsh and Baca colluded against him

23

24        [9]Plaintiff objects to Exhibit E, attached to Defendants' Motion to Dismiss, on the basis that the document

25    pertaining to a disciplinary hearing that took place on May 9, 1999 is inadmissible under FED. R. CIV. P. 609(c),

26    608, 403 and 611 (Doc. #131-2 at 11). The court will treat Plaintiff's objection as a motion to strike Exhibit E.
Defendants have failed to respond to Plaintiff's objection. Accordingly, Plaintiff's motion to strike Exhibit E is

27    **GRANTED**. Exhibit E is hereby stricken from the record.

28                                        19

to bring retaliatory disciplinary charges against him involving the incident that led to the MJ-30 and MJ-41 charges in order to increase Plaintiff's classification points and require a transfer to another prison (Doc. #32 at 37). Plaintiff alleges Defendant Walsh called Plaintiff into her office to talk about some grievances and then wrote the false notice of charges (Doc. #131-2 at 12). Plaintiff contends Defendant Walsh brought false disciplinary charges against him in order to increase his classification points to justify a transfer to another institution (*Id.*). Plaintiff further contends Defendants Walsh and Baca evidenced a retaliatory animus towards Plaintiff for filing grievances and for being a member of the Nation of Islam (*Id.*). Finally, Plaintiff contends Defendants Walsh and Baca are both Caucasian and do not want Nation of Islam members on the NSP yard (*Id.*).

In order to state a conspiracy claim under § 1983, Plaintiff must set forth allegations demonstrating that there was an agreement among the defendants to violate his constitutional rights, and that there was an actual deprivation of his constitutional rights as a result of the conspiracy. *See Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Thus, Plaintiff must identify the objective of the conspiracy and state which defendants were involved by providing factual allegations demonstrating an agreement to participate in a conspiracy to violate Plaintiff's constitutional rights and how he was harmed because of the conspiracy.

Here, there is no dispute over the underlying facts that gave rise to the MJ-30 and MJ-41 charges. In other words, Plaintiff does not dispute Defendant Walsh's version of the facts; rather, Plaintiff disputes that those facts constitute violations of MJ-30 and MJ-41. Even viewing the facts in the light most favorable to Plaintiff, he has failed to show Defendant Walsh brought false disciplinary charges against him, let alone that Defendant Walsh colluded with Defendant Baca to bring false disciplinary charges against him for the purpose of increasing his classification in order to require yet another transfer to another institution.

Conspiracy allegations must be supported by material facts, not mere conclusory statements. Plaintiff's conclusory statements that Defendants Walsh and Baca evidenced a

20

retaliatory animus towards Plaintiff, Defendants Walsh and Baca were both Caucasian, and neither Defendant Walsh nor Defendant Baca wanted Nation of Islam members on the NSP yard are insufficient to state a cognizable conspiracy claim. Thus, Plaintiff has failed to plead facts with enough specificity to show the requisite agreement or meeting of the minds on the part of Defendants Walsh and Baca to violate Plaintiff's constitutional rights. *Woodrum*, 866 F.2d at 1126. Accordingly, summary judgment on Count V should be **GRANTED**.

F.   **FIRST AMENDMENT (FREE EXERCISE OF RELIGION) – Count VII**

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted). "In order to establish a free exercise violation, [the prisoner] must show the defendants burdened the practice of his religion ... by preventing [the prisoner] from engaging in conduct mandated by his faith." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).

Defendants assert Plaintiff has failed to show that Defendants Endel, McDaniel and Whorton violated his First Amendment right to free exercise of his religious beliefs with regard to serving Plaintiff the Ramadan meals before sunrise in 2004 (Doc. #113 at 28). Defendants contend that Plaintiff was free to pray before eating his breakfast or after if time permitted; therefore, they did not violate his rights (*Id*. at 29).

Plaintiff argues Defendants failed to adjust the feeding schedule on October 31, 2004 to accommodate for daylight savings and Plaintiff further argues that, despite informing Defendants Endel, McDaniel and Whorton that the appropriate time to serve the Ramadan meals was before dawn rather than before sunrise, Defendants refused to adjust the serving time and continued to serve the Ramadan meals before sunrise (Doc. #131-2 at 14).

The Ninth Circuit recognizes an inmate's "right to be provided with food to sustain [him] in good health that satisfies the dietary laws of [his] religion." *McElyea*, 833 F.2d at 198. Here, there is no dispute that the Ramadan meals at issue stem from religious sentiments

21

1   recognized by the prison.  The dispute, rather, is over the time Defendants served the

2   Ramadan meals.

3         Defendants contend that, during Ramadan, Muslim observers must consume their

4   meals *prior to sunrise* and fast until sunset (Doc. #113 at 28).  However, AR 810.1 specifically

5   provides that the Islam / Muslim Ramadan fast begins *before dawn* until after dark for a

6   period of 29 to 30 days. Administrative Regulation 810.1 (emphasis added).  According to

7   Plaintiff, "dawn" or "Fajr" is approximately one (1) hour and thirteen (13) minutes prior to

8   sunrise (Doc. #32 at 42).  Under these facts, where Plaintiff alleges he informed Defendants

9   Endel, McDaniel and Whorton about the violation and they refused to take corrective action,

10  and Defendants do not dispute being notified about the error, Plaintiff has pled sufficient facts

11  to demonstrate Defendants burdened the practice of his religion by preventing Plaintiff from

12  engaging in conduct mandated by his faith. *Freeman*, 125 F.3d at 736. Accordingly, summary

13  judgment on Count VII should be **DENIED**.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

22

## <u>RECOMMENDATION</u>

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING in part and DENYING in part** Defendants' Motion to Dismiss (treated as a motion for summary judgment) (Doc. #113) as follows:

        1)      Summary judgment based on the doctrines of res judicata and collateral estoppel should be **<u>DENIED</u>**.

        2)      Summary judgment on Count II based on the applicable two (2) year statute of limitations should be **<u>GRANTED</u>**.

        3)      Defendants' request to dismiss Plaintiff's claims against them in their official capacities should be **<u>DENIED</u>**.

        4)      Summary judgment on Plaintiff's claims based on the doctrine of qualified immunity (as to Claims I, IV and VII) should be **<u>DENIED</u>**.

        5)      Summary judgment on Claims I and IV should be **<u>DENIED</u>**.

        6)      Summary judgment on Claim III should be **<u>GRANTED</u>**.

        7)      Summary judgment on Claim V should be **<u>GRANTED</u>**.

        8)      Summary judgment on Claim VII should be **<u>DENIED</u>**.

The parties should be aware of the following:

        1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///
///
///
///
///

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fᴇᴅ. R. Cɪᴠ. P., should not be filed until entry of the District Court's judgment.

DATED:   February 6, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

24